[Civ. No. 10391.   Third Dist.   May 10, 1962.]

JOHN LINNELL, Plaintiff and Respondent, v. STATE DE-PARTMENT OF FINANCE et al., Defendants and Appellants.

Stanley Mosk, Attorney General, and G. A. Strader, Deputy Attorney General, for Defendants and Appellants.

Donald A. Peters and John W. McElheney for Plaintiff and Respondent.

Hill & Hill and Clayton O. Rost as Amici Curiae on behalf of Plaintiff and Respondent.

SCHOTTKY, J.—The defendants have appealed from a judgment by which they were enjoined from "interfering with the plaintiff's [John Linnell] use of the parking area on the campus of Sacramento State College, or any parking area, because of any failure on his part to enter into any leasing arrangement required by Section 953.5 of Title 5, California Administrative Code or for any lack on his part to pay an exaction or fee for the privilege of parking to help support the Sacramento State College."

John Linnell, the respondent, is a member of the Sacramento State College faculty. In the fall of 1960 he was advised that if he parked his vehicle in one of the parking lots on the campus without entering into a lease agreement he would receive a ticket for illegal parking. The college charged a fee of $13 per semester for the privilege of parking in an unreserved space on campus. With certain exceptions not applicable here, it was necessary to enter into an agreement and pay a fee for the privilege of parking on the campus.

The issue presented by this appeal is whether or not a state agency, and particularly a state college, was authorized prior to September 15, 1961, by statute, regulation or otherwise to provide parking facilities for state employees on state-owned property and charge the users of such facilities a fee for the privilege of parking their private vehicles on said parking lots.

The decision of the trial court was based upon the court's view that no statutory authority existed authorizing the charging of such a fee and in the absence of such statutory authority the college officials lacked the right to charge a parking fee. Appellants contend that no such specific statu-

tory authorization is required to support the imposition of the parking fees involved in this case and that if such specific statutory authority is required adequate authority is found in the provisions of section 13109 of the Government Code and section 24103 of the Education Code.

Section 13109 of the Government Code at the time of the decision in this matter in the trial court, and at the present time, provides in part as follows: "With the consent of the state agency concerned, the director may: (a) Let for a period of not to exceed five years, any real or personal property which belongs to the State, the letting of which is not expressly prohibited by law, if he deems such letting is in the best interests of the State."

Section 24103 of the Education Code, as it was in effect at the time here involved, provided:

"The president of a state college, with the approval of the Director of Education and Director of Finance, may let any property of the state college for any purpose which will not interfere with the requirements of the state college. The Director of Education and the Director of Finance may each exempt from the requirement of his approval under this section certain types or classes of transactions and authorize the entering into of such transactions without submitting them for his approval.

"Any rental received under this section shall be deposited in the State Treasury and credited to the support appropriation or appropriations of the college current during the period of occupancy."

The trial court in its decision held that the word "let" used in these sections, authorizing the letting of state property, is the equivalent of the word "lease." From this assumption the court then proceeded to hold that since the arrangement entered into between the college and the members of the staff for the providing of parking facilities does not amount to a "lease" as that term is interpreted with respect to a granting of an interest in real property, the imposition of the fees were not authorized by these statutes.

Appellants contend that the word "let" as used in these two statutes is not the equivalent of the word "lease" and that the authorization given by these statutes is not restricted to the execution of a lease creating the relationship of landlord and tenant, but such authorization includes the right to execute an agreement for the use of state property in the

nature of a license, i.e., the granting of the use of state property for compensation.

Appellants argue that this interpretation is supported first by the fact that the Legislature in enacting section 24103 of the Education Code, with which we are here concerned, purposely used the word "let" in the phrase "may let any property of the state college," whereas in the two preceding sections the Legislature specifically used the word "lease." Section 24101 provides that the director "may lease any property of a state college," and section 24102 provides that the director "may lease land of a state college." ▆▆ They argue further that "It must be presumed that this use of a different word in section 24103 was deliberate and that the legislature had in mind a distinction between a 'lease' and a 'letting' of property. This conclusion is also supported by the fact that section 24103 authorizes the Director to 'let' both real and personal property. There would not be a leasing of personal property but rather a hiring out of such property. For example, if a state college had a number of typewriters which were not needed, under this section such typewriters might be let to private persons upon the payment of a consideration. This would not be a lease creating the relationship of landlord and tenant, but a letting out of property."

We have concluded that appellants' contention must be sustained. We believe that in using the word "let" the Legislature intended that the Director of Education might permit the use of state property upon the payment of a consideration and that such letting need not amount to the execution of a formal lease. This conclusion is supported by a study of the word "let" and its meaning. In 52 Corpus Juris Secundum, at page 1052, the various meanings of the word "let" as judicially construed are set forth. It is therein stated that the word "let" when used as a verb means: "To allow; to award; to demise; to exchange; to give; to give leave to; to permit; to grant the use of realty for compensation; to hire out a thing for a compensation; to lease; to lease or grant the use and possession of a thing for compensation." It is also stated therein that the word "let" has been held to mean the correlative of the word "hire."

Webster's New International Dictionary (2d ed. 1959) defines the word "let" to mean, "To allow to be used or occupied for a compensation; to lease; to rent; to hire out; . . ."; also "To permit; allow; suffer; . . ." The Oxford English Dictionary defines the word "let" as follows: "To grant the

temporary possession and use of (land, buildings, rooms, movable property) to another in consideration of rent or hire."

We believe that these definitions of the word "let" do not indicate a restricted meaning such as that indulged in by the trial court in reaching its conclusion herein. Section 24103 of the Education Code provides that the president of a state college "may let any property of the state college for any purpose which will not interfere with the requirements of the state college." Section 2 of the Education Code provides that its provisions are to be liberally construed with a view to effect its objects. ▮▮▮ We are satisfied that the Legislature used the word "let" in the broad sense and that the requirement that members of the faculty of the state college could not park their automobiles in the parking lot on the campus without entering into an agreement to pay a fee for the privilege was within the authority granted by the statute.

As an alternative ground for affirming the judgment respondent contends that appellant, Sacramento State College, has no power to adopt a revenue raising regulation in the absence of specific authority and states that the so-called fee is in reality a revenue raising device and a tax. In support of this contention he relies on the finding of emergency appended to section 953.5 of title 5, California Administrative Code when it was filed with the Secretary of State. This is the section which provides for the letting of parking space. The finding of emergency stated in part that the budgets for the state colleges had been reduced by an amount equal to the estimated revenue from vehicle parking charges, and it was necessary that there be no interruption in the collection of such charges to finance the operation of the state colleges in accordance with legislative intent.

▮▮▮ While it is no doubt true that appellant has no power to adopt a revenue-raising regulation in the absence of specific authority, the parking fee involved in the instant case is not a tax. ▮▮▮ "A tax is a forced charge, imposition, or contribution; it operates in invitum, and is in no way dependent upon the will or contractual assent, express or implied, of the person taxed." (51 Am. Jur., Taxation, § 5; see also *Perry* v. *Washburn,* 20 Cal. 318.) ▮▮▮ In the instant case the fee for parking was not imposed against respondent regardless of whether he wanted to use the parking facilities or not. It was optional with him whether or not he chose to use the facilities. In such a case the fee charged was not a tax. (*Westbrook, Inc.* v. *Town of Falls Church,*

185 Va. 577 [39 S.E.2d 277, 167 A.L.R. 1027].)　There is therefore no merit in this argument of respondent.

No other points require discussion.

The judgment is reversed.

Peek, P. J., and Pierce, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 3, 1962.