Joseph MENZ, Michael E. Froelich, and Jerome T. Feist, for themselves and for all other citizens, residents, and taxpayers similarly situated, Plaintiffs and Appellants,

v.

Robert F. COYLE, as County Judge and ex-officio Clerk of the District Court, and Michael Snider, as Treasurer, respectively, of Sioux County, North Dakota; and The Bar Association of the State of North Dakota and George T. Dynes, its Secretary and Treasurer, Defendants and Respondents.

No. 7996.

Supreme Court of North Dakota.

Oct. 5, 1962.

C. F. Kelsch, Mandan, for plaintiffs and appellants.

John A. Zuger, Bismarck (H. G. Nilles, Fargo, and Mack V. Traynor, Devils Lake, on brief), for defendants and respondents.

STRUTZ, Justice.

This is an action brought to challenge the validity of Chapter 228 of the Session Laws of 1947, the various sections of which have now been incorporated into the new North Dakota Century Code. The portions of the law which plaintiffs contend are unconstitutional include that section which provides for an increase of from five dollars to seven dollars and fifty cents for filing an action in the district courts, the section providing for a similar increase for filing petitions for letters testamentary, letters of administration, and letters of guardianship in the county courts, and the section providing for the monthly payment by the county treasurers to the State Bar Association of such sums received because of the increase in such filing fees. The plaintiffs seek a declaratory judgment holding such portions of the law invalid, and pray for a permanent injunction against the defendant county treasurer and clerk of court restraining them from collecting such increase in fees and from remitting such increase to the State Bar Association.

The plaintiffs brings this action for themselves and for all other citizens and taxpayers similarly situated. The complaint alleges that the plaintiff Feist filed a petition for letters of administration in the county court, in the estate of his father, and, when a filing fee of seven dollars and fifty cents was demanded by the defendant county judge, he paid five dollars of the fee without protest but paid the increase provided for by Chapter 228 under written protest. The complaint further alleges that the plaintiff Froelich is the owner of certain real estate in Sioux County which he acquired under tax deed, and that, in bringing an action to quiet title on such tax lands, he paid the filing fee of seven dollars and fifty cents demanded by the clerk by paying five dollars of the same without protest and the increase of two dollars and fifty cents under written protest.

Under the provisions of the law which the plaintiffs seek to have declared unconstitutional, the increase in such filing fees is remitted to the county treasurer and by him paid to the State Bar Association. It is undisputed that the moneys received under this law have been used by the Bar Association for legal research and education, and for supervision and improvement of the judicial system of the State of North Dakota.

The question presented by this appeal is whether Chapter 228 of the 1947 Session Laws violates certain designated provisions of either the North Dakota Constitution or the Federal Constitution.

The contention of the plaintiffs is that the law violates several provisions of both State and Federal constitutions, including Section 20 of the North Dakota Constitution, which provides that no special privileges shall be granted nor shall any class of citizens be granted privileges not extended to all; that it violates Section 185 of the North Dakota Constitution, which provides that the State shall not loan or give its

credit to or make donations in aid of any association; that it violates Sections 175 and 176 of the State Constitution, which sections provide that every tax law shall state its object, which must be a public purpose and for which purpose alone such tax money shall be used, and that all taxes shall be uniform; that it violates Section 13 of the North Dakota Constitution and Amendments V and XIV to the Federal Constitution, which provides that no person shall be deprived of property without due process of law; and, finally, that its provisions violate Section 186 of the State Constitution requiring that all public moneys of the State shall be paid over monthly to the State Treasurer, and shall be paid out by him only pursuant to appropriation first made by the Legislature.

The defendants deny the invalidity of the law, and contend that Chapter 228 of the 1947 Session Laws is constitutional. The trial court found for the defendants and ordered the entry of judgment dismissing the plaintiffs' complaint. From this judgment the plaintiffs have appealed, demanding a review of the entire case and a trial de novo of all of the issues in the action.

 Every legislative enactment is presumed to be constitutional, and will be upheld unless it is manifestly in violation of the State or the Federal Constitution. O'Laughlin v. Carlson, 30 N.D. 213, 152 N.W. 675. Such presumption is conclusive unless the statute is clearly shown to contravene some provision of the State or Federal constitutions. Northwestern Imp. Co. v. Morton County, 78 N.D. 29, 47 N.W.2d 543; State v. Cromwell, 72 N.D. 565, 9 N.W.2d 914.

 In considering the constitutionality of an Act, every reasonable presumption in favor of its constitutionality prevails. Anderson v. Peterson, 78 N.D. 949, 54 N.W.2d 542; State ex rel. City of Minot v. Gronna, 79 N.D. 673, 59 N.W.2d 514.

 And the courts will not declare a statute void unless its invalidity is, in the

judgment of the court, beyond a reasonable doubt. Ferch v. Housing Authority of Cass County, 79 N.D. 764, 59 N.W.2d 849; Kessler v. Thompson (N.D.), 75 N.W.2d 172.

Thus the Legislature has the power to enact any law not prohibited by the State or Federal constitutions.

 Before considering the specific issues raised by this appeal, it would be well to review the laws and the constitutional provisions of this State relating to the practice of law.

Before any person may engage in the practice of law in North Dakota, he must take an examination to be given by the State Bar Board. Sec. 27–11–05, N.D.C.C. Every applicant to practice must meet certain qualifications as fixed by law. Sec. 27–11–03, N.D.C.C. He must pay an annual license fee which is fixed by law and which fee is paid into the State treasury. Sec. 27–11–23. He is required to take an oath to support the State and the Federal Constitutions. Sec. 211, N.D.Const., and Sec. 27–11–20, N.D.C.C. His duties and powers as a lawyer are also fixed by law. Secs. 27–13–01 and 27–13–02, N.D.C.C.

The State Bar Association is created by statute. Sec. 27–12–01, N.D.C.C. The law requires that the secretary-treasurer of the State Bar Association be bonded, and it fixes the amount of his bond. Sec. 27–12–05, N.D.C.C. The method of spending the funds of the State Bar Association is regulated by law. Sec. 27–12–06, N.D.C.C. An annual itemized statement of receipts and disbursements is required by law to be filed. The law further provides that all funds received by the State Bar Association under the provisions of Chapter 228 of the 1947 Session Laws, whose constitutionality is being questioned in this lawsuit, shall be used "for legal research and education, and supervision and improvement of the judicial system of the state of North Dakota." Sec. 27–12–08, N.D.C.C.

State law also provides for a State Bar Board. Its powers and duties are fixed by

law. Sec. 27–11–13, N.D.C.C. The method of disbursement of its funds is specifically provided for in Sec. 27–11–24.

A judicial council, whose membership is comprised solely of members of the State Bar Association and whose functions and duties are specifically provided for, is created by statute. Secs. 27–15–01 and 27–15–05, N.D.C.C. This judicial council is required to make a continuous study of the judicial system of the State, to the end that judicial procedure may be simplified and justice better administered.

■ We will first consider the plaintiffs' contention that the provisions of Chapter 228 are invalid because they violate Section 20 of the North Dakota Constitution. This section provides that no special privileges shall be granted nor shall any class of citizens be granted a privilege not extended to all. The plaintiffs' contention on this ground is based on the proposition that the legal profession is a private calling and that the State Bar Association is a private organization; that, by giving to the State Bar Association a portion of the filing fees, the Legislative Assembly is, in effect, granting a special privilege to this association which other associations are not given.

As heretofore pointed out, the North Dakota Bar Association was created by an Act of the Legislative Assembly. It was the first integrated Bar in the entire United States. The law creating the North Dakota Bar Association had for its purpose the regulation of the practice of the law in this State, in order to protect the public by eliminating from the practice those persons who are unfit to assume this privilege and those persons lacking proper training and qualifications necessary to perform the services of an attorney in the best interests of the public. In other words, the purpose of the Legislature in creating the State Bar Association was to protect the public interests. The Act creating the State Bar Association is based on the premise that the practice of law is a matter of vital interest to the general public, and that lawyers are engaged in the preservation and the protection of the fundamental liberties and rights of the people and in the administration of justice. Thus attorneys are constantly engaged in carrying out fundamental aims and purposes of any good government, and are a necessary aid to any good government in protecting the rights of its citizens.

Section 37 of the North Dakota Constitution specifically provides that the office of attorney at law is a public office.

Because the practice of law is so vital to the best interests of the public, the Legislature has provided that only those persons who comply with certain educational and other standards may be admitted to the practice of law in this State. From time to time, the qualifications necessary for admission to the practice of law in North Dakota were raised. Because the enjoyment of the rights and liberties of the people of the State is dependent upon a competent Bar and a constantly improved judicial system, and because the attorney is a public officer, any member of the State Bar may be required to represent, without compensation, any needy person charged with a public offense who is unable to provide for his own defense. Numerous attorneys have served in such capacity, without pay, for periods of from one or two days to periods of many months. If it were not for the public character of the office of attorney at law, no lawyer could be compelled to serve and be forced to donate his time and energies without violation of his constitutional rights as a free citizen. Yet statutes requiring lawyers to donate their services without compensation have been held valid. Brown v. Warren County, 156 Iowa 20, 135 N.W. 4, 137 N.W. 474.

The contention of the plaintiffs that the Bar Association is a private group, organized and existing solely for the benefit of its members, is therefore without merit. The Bar Association was created and now exists under and by virtue of the laws of this State. The practice of law being made a public calling by the laws of North Dakota, and such calling having been created

for the protection and safeguarding of the liberties and rights of the people, it is within the power of the Legislature to provide for continued legal research and education and for the proper supervision and continued improvement of the judicial system.

The plaintiffs next contend that the provisions of Chapter 228 violate Sections 175 and 176 of the North Dakota Constitution. Section 175 provides that no tax shall be levied except in pursuance of law and that every tax law shall state distinctly the object to which the money shall be applied, for which purpose only it shall be used, and Section 176 provides that taxes shall be uniform.

Since Chapter 228 levies a fee of two dollars and fifty cents on each case filed in a district court and a similar sum on each petition filed in a county court for letters testamentary, letters of administration, and letters of guardianship, we must first determine whether this is a fee or a tax. The plaintiffs contend that it is a tax, while the defendants claim that the sums so levied are in fact fees and that the provisions of Sections 175 and 176 of the North Dakota Constitution are not applicable to them.

The moneys collected under this chapter are designated as "fees" by the Legislature. The fact that they are called "fees," however, does not decide the question of whether they are in fact fees or taxes. The name by which a tax is called in the law creating it is not controlling. It is the circumstances, the incidence, and the attributes of each case which control. Montana-Dakota Power Co. v. Weeks, D.C., 8 F.Supp. 935.

■ This court has defined a "tax" as "an enforced contribution for public purposes and is in no way dependent upon the will or express consent of the person taxed." State v. Kromarek, 78 N.D. 769, 52 N.W.2d 713; certiorari denied, 343 U.S. 968, 72 S. Ct. 1064, 96 L.Ed. 1364.

See also Gunby v. Yates, 214 Ga. 17, 102 S.E.2d 548, where the court defines a "tax" as "an enforced contribution exacted pursuant to legislative authority for the purpose of raising revenue to be used for public or governmental purposes."

Other courts have defined a "tax" in various ways, but practically all judicial definitions have characterized a "tax" as a forced burden, a charge, an exaction, an imposition, or a contribution assessed in accordance with some reasonable rule of apportionment, by authority of a sovereign State, upon persons or property within its jurisdiction, to provide public revenue for support of the government, the administration of the law, or the payment of public expenses. 51 Am.Jur., "Taxation," Sec. 3, p. 35, et seq.

■ Thus, while the distinction between a fee and a tax is one that has not always been observed in the decisions of the courts, any payment exacted by the State as a contribution toward the cost of maintaining governmental functions, where special benefits derived from their performance are merged in the general benefit, is a tax. Here, the payment of the sums in question is an enforced contribution, and the special benefit to the one making the payment is merged in the general benefit for public purposes. If, as heretofore pointed out, the practice of law is a matter of vital interest to the public, in that lawyers are engaged in the preservation and protection of the fundamental rights and liberties of the people, and if lawyers are engaged in carrying out the fundamental purposes of the State government, then the enforced contribution for legal research and education and for the supervision and improvement of the judicial system of the State is not only for the benefit of the one using the courts but is for the support of governmental functions, and therefore is a tax.

Since the imposition of the additional fee of two dollars and fifty cents under the provisions of Chapter 228 is a tax, it must comply with the provisions of Sections 175 and 176 of the State Constitution.

Does the law in question distinctly state the object of the tax; are the proceeds of

the tax applied to such purpose; and are the taxes imposed thereunder uniform?

■ The law specifically states the object of the tax. It provides that all funds received under its provisions "shall be used for legal research and education, and supervision and improvement of the judicial system of the state of North Dakota."

Nothing in the record before us indicates that the money, or any part of the money, raised under the provisions of this law has been used for any purpose other than those set forth in the law. It would, of course, be within the power of the Legislature to require that a detailed accounting of the use of such funds be given by the Bar Association.

An argument similar to the contentions of the plaintiffs in this case was advanced against the validity of a statute which imposed a mileage tax on trucks used exclusively in interstate commerce. This tax was imposed for "using the highways of the state," and the tax was to be paid into a fund designated as the "Auto Transportation Fund of the Board of Railroad Commissioners." The money in this fund was used by the Commission for the payment of expenses in operating the department. Those attacking the validity of such mileage tax contended that the law imposing the tax did not state distinctly the purpose for which the tax was imposed, and that the tax was in fact used for purposes other than those for which it was imposed.

This court had before it this mileage tax in the case of State v. Goeson, 65 N.D. 706, 262 N.W. 70 (1935). The court, in that case, held that the statute was valid and that the expressed purpose for which the tax was imposed, i.e., compensation for use of the highways, sufficiently set forth the object of the tax, and that the provision that such tax be paid into the "Auto Transportation Fund" of the Railroad Commission was a sufficient application of the funds so raised to the purpose for which the tax was imposed.

This court, in the Goeson case, held:

"There is no merit in the statement that this tax levied is not used for the purpose for which it was intended by the Legislature. The Legislature intended this tax should go into the auto transportation fund and it does."

Using the same logic, and applying it to the case now before us, it cannot be contended that the provision in Chapter 228, to the effect that the tax to be raised "shall be used for legal research and education, and supervision and improvement of the judicial system of the state," is not a sufficiently distinct statement of the object for which the tax is imposed, and that using the tax for such purpose violates Section 175 of the Constitution.

■ The plaintiffs further contend that the tax is invalid under Section 176 of the Constitution because the tax is not uniform, in that the law does not apply to all who use the courts. It is contended that only those who file actions in the district courts or petitions in the county courts are required to pay the fee, and that it is not required of those who are parties defendant or those parties who may be brought in as parties plaintiff or parties defendant on motion. We do not believe this argument has merit. The tax is uniform, in that it applies to everyone, without exception, who files an action in district court or who files a petition for letters testamentary, letters of administration, or letters of guardianship in county court. The mere fact that the tax is not imposed upon others who may be forced into court as defendants or as third parties does not make the statute unconstitutional and lacking in uniformity in its application. If the statute provided that the tax should be imposed only upon persons filing certain types of actions, as, for example, a tort action, then the law would not be uniform in its application. But where, without any discrimination or favor, the tax is imposed upon all who commence actions in district court and upon all who file petitions for letters testamentary, letters of

administration, or letters of guardianship in county court, it clearly is not subject to the objection that the tax is not uniform.

 We next consider the contention advanced by the plaintiffs that the provisions of Chapter 228 deprive them, as citizens and taxpayers, of property without due process of law in violation of Section 13 of the State Constitution and in violation of Amendments V and XIV to the Federal Constitution. The plaintiffs do not question the imposition of the five-dollar filing fee. In fact, both plaintiffs have paid such five-dollar filing fees without protest. The right of the State to require reasonable filing fees has been upheld by this court in the case of Malin v. LaMoure County, 27 N.D. 140, 145 N.W. 582.

A different question confronts us, however, with reference to the tax of two dollars and fifty cents for each case filed in district court and for each petition filed in county court, even though such tax is levied in pursuance of law and the object to which such tax shall be applied is distinctly stated in the law, and even though the tax is uniform. We must determine, therefore, whether the imposition of such tax for public purposes upon all who use the courts is depriving such persons of property without due process.

 This court has said that the Fifth Amendment to the Federal Constitution is a limitation only on the Federal Government's power and does not apply to the States, and therefore it would not be applicable to the questions raised in this case. Donaldson v. City of Bismarck, 71 N.D. 592, 3 N.W.2d 808.

 Generally speaking, the term "due process of law" is not susceptible of exact definition, and the courts do not attempt to define in a few words what is meant by that phrase. 16A C.J.S. Constitutional Law § 567, at p. 536.

Any definition of "due process" very likely would fail to embrace all the cases to which it would apply. In order to declare a law unconstitutional on the ground that it violates due process, it must appear that the Legislature had no power to act in the particular matter or, having power to act, that such power was exercised in an arbitrary, unreasonable, or discriminatory manner and that the method adopted has no reasonable relation to attaining the desired result.

The imposition of a reasonable tax on litigation has been upheld as consistent with free justice and not in violation of the "due process" clause. A law library fee for a county law library for use of all attorneys, without charge, does not infringe upon this guaranty. Marquardt v. Fisher, 135 Or. 256, 295 P. 499, 77 A.L.R. 265.

To the same effect, the courts of Alabama have held that a "library tax" imposed upon litigants for the benefit of a law library does not violate the "due process" clause. Birmingham Electric Co. v. Harry, 21 Ala.App. 483, 111 So. 39.

 Under the "due process" clause, a State cannot impose taxes for merely private purposes. Green v. Frazier, 44 N.D. 395, 176 N.W. 11; affirmed in 253 U.S. 233, 40 S.Ct. 499, 64 L.Ed. 878.

What is or what is not a "public purpose" necessarily depends upon the conditions or circumstances in each case. Since it is one of the prime functions of government to protect the liberties and rights of its people, any law which imposes a tax for the purpose of supervision and improvement of the judicial system of the State, in order that this prime function of the government may be improved, imposes such tax for a public purpose. If the people of the State, acting through their duly elected representatives in the State Legislature, impose a tax of two dollars and fifty cents upon persons who, by using the courts, are receiving the benefits of our judicial system, such tax, imposed solely for each case filed in district court and for each petition filed in county court for letters testamentary, letters of administra-

tion, and letters of guardianship, is imposed upon persons who are receiving the benefits of the improved judicial system, and such statute does not deprive the persons so using the courts of due process. As this court said, in the case of State v. Goeson, supra, where the mileage tax imposed was limited to truckers who were engaged solely in interstate commerce, which mileage tax was to pay for the use of the highways, "Levying a reasonable tax is not depriving a person of property without due process of law."

Thus, levying a reasonable tax for the use of the courts, which tax is levied for a specific public purpose, the improvement of the courts being used, would not be depriving persons required to pay the same of property without due process of law. As we have seen, the purpose for which this tax is imposed is "for legal research and education, and supervision and improvement of the judicial system." There may be some question whether moneys raised for legal education would be for a public purpose, and whether imposition of such tax might not be depriving persons upon whom it is imposed of due process under the holding of this court in the case of Malin v. LaMoure County, supra.

In the light of our decision, as we arrive at that decision later in this opinion, that moneys raised under the provisions of Chapter 228 must be deposited by the secretary of the State Bar Association with the State Treasurer and paid out only pursuant to specific appropriation first made by the Legislature, we cannot now say that the Legislature will appropriate any of these moneys for a purpose which is not a public purpose. If the legislative appropriation of such moneys is for legal research and for supervision and improvement of the judicial system of the State, it clearly would be for a public purpose. Until the Legislature does in fact provide that such moneys shall be used for some private purpose, this court should not strike down the legislation on the ground that

there is a probability that such moneys, or a part of such moneys, may be appropriated for purposes other than a legitimate public purpose.

Plaintiffs next contend that the payment of a portion of such filing fee to the State Bar Association is in violation of Section 185 of the State Constitution, which provides that the State shall not loan or give its credit or make donations to or in aid of any individual, association, or corporation except for the reasonable support of the poor. Plaintiffs contend that payment of a portion of the filing fees collected, which portion is eventually remitted to the State Bar Association, is in effect a donation to and is given in aid of an association in violation of this provision of the Constitution.

As we have seen, the practice of law is regulated by statute in the State of North Dakota; an annual fee is exacted from every person who engages in such practice, and the moneys received from such license fees are paid into the State treasury; the duties and powers of an attorney are fixed by law; the State Bar Association, to whom has been entrusted the duty of continuing legal research and education, and the further duty of supervising and improving the judicial system of the State, acts in this capacity for the benefit of the public. It is not a voluntary association of attorneys, but is an association of which every licensed attorney in the State, by law, is made a member whether he desires to be a member or not.

Surely an association whose existence is regulated and controlled by law, whose members are made public officers by the Constitution itself, and whose activities are regulated and controlled for the benefit of the public, who can be compelled to represent indigent citizens without pay, and whose members are subject to disbarment for violation of rules and regulations established pursuant to law, cannot be held to be a private association existing only for the benefit of its members.

We therefore are of the opinion that the provisions of Chapter 228 of the 1947 Session Laws do not constitute a loan or credit or amount to a donation in aid of a private association. The enactment of this statute by the Legislative Assembly was an attempt by the State of North Dakota to provide for its people the very best of legal services, which services the Legislature, in its discretion, considered necessary to protect the people in their fundamental liberties and rights. We have seen the results of a failure to protect the fundamental rights and liberties of peoples in those countries where the state is considered supreme; where the liberties and fundamental rights of peoples have been lost because the governments failed to provide for continued legal research and education and where the governments made no provision for the proper supervision and improvement of the judicial system. Surely the protection of the fundamental rights and liberties of citizens is a very fundamental aim of all good government. If, in carrying out such aim, the legislative body enacts a statute such as was enacted by the Legislature of this State when it adopted Chapter 228 of the 1947 Session Laws, this court cannot say that such aim is not for a public purpose and one which the Legislature, in its discretion, is not authorized to provide for its people.

We now consider the last contention of the plaintiffs, that the provisions of Chapter 228 violate Section 186 of the North Dakota Constitution. This section provides:

"All public moneys, from whatever source derived, shall be paid over monthly by the public official, employee, agent, director, manager, board, bureau, or institution of the State receiving the same, to the State Treasurer, and deposited by him to the credit of the State, and shall be paid out and disbursed only pursuant to appropriation first made by the Legislature; * * *."

Counsel for the defendants contend that fees paid for filing actions in district court and for filing petitions in county court are not public moneys. As we have heretofore pointed out, these so-called fees which are before the court in this case are in fact taxes imposed by law for the support of the government and in discharge of some of its obligations. Being taxes, they are public moneys. The mere fact that these moneys are paid into a special fund for a special purpose does not make them any the less public moneys.

All public moneys, however, do not come within the provisions of Section 186 of the Constitution. That section applies only to public moneys collected by public officials or institutions "of the State." Therefore, the moneys collected by the clerks of court and by the county treasurers in the form of the tax of two dollars and fifty cents on each action filed in district court and on each petition filed in county court are not public moneys collected by public officials or institutions of the State, but are public moneys collected by county officials under a specific statute requiring them to remit such moneys monthly to the secretary-treasurer of the State Bar Association.

The secretary-treasurer of the State Bar Association, to whom such moneys are remitted under this statute, is, however, a public official of the State. Thus, when the secretary-treasurer of the State Bar Association receives these public moneys, as such public officer of the State, from the various county treasurers, such moneys do come within the scope of Section 186, requiring "all public moneys, from whatever source derived," to be paid over to the State Treasurer and deposited by him to the credit of the State and to be paid out and disbursed "only pursuant to appropriation first made by the Legislature" unless the wording of the chapter itself constitutes an appropriation or unless these moneys come within the exceptions provided for in the statute.

Does the wording of Chapter 228, to the effect that "all funds received by the state bar association of North Dakota as herein provided shall be used for legal research and education, and supervision and improvement of the judicial system of the state of North Dakota," amount to an appropriation of these moneys?

■ This court has held that an "appropriation," as the word is used in Section 186 of the Constitution, is the setting apart of a definite sum for a specific object in such a way that the public officials can use the amount appropriated, and no more than the amount appropriated. Campbell v. Towner County, 71 N.D. 616, 3 N.W.2d 822.

■ This court has also held that, in all cases that fall within Section 186 of the Constitution, all fees collected for a State-wide public purpose, by authority of the law, may be spent only pursuant to legislative appropriation.

"* * * The Legislative Assembly must make specific and direct appropriations of the amounts to be expended * * * and specify the purpose for which the same shall be expended, * * *." Langer v. State, 69 N.D. 129, 284 N.W. 238.

■ The attempted appropriation of "all funds received by the state bar association of North Dakota as herein provided" does not meet the requirement that the Legislature must make specific and direct appropriation of the funds to be expended. Even though the requirement that an appropriation must specify the purpose for which it shall be expended is met by the provisions of Chapter 228, there is no specific and direct appropriation of a definite sum, and therefore no valid appropriation of the moneys in question.

■ Since the moneys are public moneys, and there is no specific and direct appropriation of these sums and no valid

appropriation, our last inquiry is whether these sums come within the exception provided for in Section 186 of the Constitution. That exception reads:

"This constitutional amendment shall not be construed to apply to fees and moneys received in connection with the licensing and organization of * * * lawyers, * * *."

It is clear that these fees are not received "in connection with the licensing" of lawyers, for they are not license fees. They are a tax levied upon those who use the courts and are not license fees.

We do not believe that these moneys are fees and moneys received in connection with the organization of lawyers, as provided in the exception in Section 186 of the Constitution. They are not moneys which the secretary-treasurer of the Bar Association receives in connection with or arising out of the organization of the State Bar Association. They are tax moneys which the secretary-treasurer of the organization receives on behalf of the Bar Association for carrying out a definite public purpose. As such, we believe the secretary-treasurer of the organization must deposit them with the State Treasurer, to the credit of the State, and they must be and may be paid out and disbursed only pursuant to appropriation made by the Legislative Assembly.

■ It has been suggested that Chapter 228 violates still other provisions of the North Dakota Constitution not specifically referred to by the plaintiffs. That may be true. This court, however, cannot pass on the constitutionality of statutory provisions unless the parties attacking their validity point out the specific provision of the Constitution which they claim is being violated. State v. Ligaarden, 59 N.D. 475, 230 N.W. 729, 70 A.L.R. 126; Baird v. Rask, 60 N.D. 432, 234 N.W. 651; State v. Schmidt, 72 N.D. 719, 10 N.W.2d 868; State ex rel. Rausch v. Amerada Petroleum Corp., 78 N.D. 247, 49 N.W.2d 14.

It is not for this court to search through the Constitution to determine whether all possible constitutional questions have been raised. The rule is well settled that it is incumbent upon the one who assails the validity of legislation to point out the specific provision of the Constitution which is violated.

■ The rule is well established that, where a part of a statute is unconstitutional, that fact does not require the courts to declare the entire law unconstitutional. Malin v. LaMoure County, supra; Cooley's Constitutional Limitations, 8th Ed., p. 359. In this case, Chapter 228, the constitutionality of which is being attacked, had a savings clause which provided:

"If any provision of this Act shall be held invalid, the remainder of this Act shall not be affected thereby."

Chapter 228 is a valid enactment and levies a valid tax for a public purpose, and all of its provisions are valid except that there has been no appropriation made for the disbursement of the moneys collected under its provisions. Therefore, the collection of moneys by the county officials is valid; payment of such moneys to the secretary-treasurer of the Bar Association is valid. Under the provisions of Section 186 of the Constitution, however, the secretary-treasurer of the Bar Association must deposit such moneys with the State Treasurer and such moneys may be paid out and disbursed only according to specific appropriation made by the Legislature.

■ Where part of the statute is unconstitutional because there has been no specific appropriation for the disbursement of such moneys, that fact does not require this court to declare the whole law unconstitutional. All of the law will remain in full force and effect; the county officials will collect the tax and remit to the secretary-treasurer of the Bar Association, but the Bar Association, instead of paying out and disbursing such funds, will deposit them with the State Treasurer and they will be disbursed only on specific appropriation made by the Legislative Assembly for the specific purposes for which such moneys have been collected.

The judgment of the district court will be modified as herein provided. The question presented being a public question, no costs will be taxed.

SATHRE, C. J., and MORRIS, BURKE and TEIGEN, JJ., concur.