CHECKER CAB COMPANY *v.* TOWNSHIP OF ROMULUS.

KLAZER *v.* SAME.

1. TOWNSHIPS—TAXICABS—LICENSE—STATUTES.

    A township has the power to license and otherwise regulate the taxicab business by virtue of power conferred by statute to adopt ordinances regulating the health and safety of persons and property (CLS 1956, § 41.181, as amended by PA 1959, No 55).

2. SAME—TAXICAB ORDINANCE—AIRPORT REGULATIONS BY BOARD OF COUNTY ROAD COMMISSIONERS.

    There is no conflict between township ordinance regulating taxicab business within the township and charging a license fee therefor and concession agreement, authorized by State aeronautics code, between board of county road commissioners in charge of airport located within the township, which grants exclusive rights thereunder to load passengers at the airport at certain places and requires the favored carriers to provide insurance and obtain all licenses required by Federal, State, and local governments but is silent as to rates to be charged, conditions of taxicabs, or qualifications of drivers (CLS 1956, § 41.181, as amended by PA 1959, No 55; CL 1948 and CLS 1956, § 259.1 *et seq.*, as last amended by PA 1959, No 181; Romulus Township Ordinance No 35).

3. SAME—ORDINANCES—LICENSE FEES—REVENUES—COST OF REGULATION—POLICE POWER.

    Township ordinance which licenses and regulates use of taxicabs therein but which, if enforced, would provide revenues from license fees far in excess of the cost of regulation of the operation of taxicabs in the township *held,* invalid as an exercise of the police power (Romulus Township Ordinance No 35).

REFERENCES FOR POINTS IN HEADNOTES

[1, 3]  52 Am Jur, Towns and Townships §§ 22, 23.
[2]  52 Am Jur, Towns and Townships §§ 22, 23.
   8 Am Jur 2d, Aviation § 56.
[4]  14 Am Jur, Costs § 99.

4. Costs—Briefs on Appeal.

    Costs in cases consolidated are limited to appellees who have filed
      briefs on appeal, where case is affirmed.

Appeal from Wayne; Gilmore (Horace W.), J. Submitted June 4, 1963. (Calender Nos. 10, 11, Docket Nos. 50,128, 50,129.) Decided October 10, 1963.

Bill by Checker Cab Company, a nonprofit Michigan corporation, and Gordon Wilson against the Township of Romulus to enjoin enforcement of ordinance regulating and imposing license fees on taxicabs. Similar action by Eddie Klazer, John Clark, Garfield Calcaterra, Walter Kamm, and Stanley Urban, doing business as Lorraine Cab Company. Board of County Road Commissioners of the County of Wayne, operators of Detroit Wayne County Metropolitan Airport, intervened as party plaintiff. Cases consolidated for trial and on appeal. Decree for plaintiffs. Defendant appeals. Affirmed.

*Philip J. Neudeck,* for plaintiff Checker Cab Company.

*William J. Mullaney,* for plaintiff Gordon Wilson.

*John P. Cushman,* General Counsel, and *John E. Breen,* for intervening plaintiff.

*Anthony F. Leone* (*J. Lynn Fewlass,* of counsel), for defendant.

Souris, J. This appeal by Romulus township is from a decree entered in consolidated suits instituted by 2 taxicab companies restraining the township from enforcing its taxicab licensing ordinance

(Romulus township Ordinance No 35, as amended). Plaintiffs, and other taxicab companies, pick up passengers from, and deliver passengers to, Metropolitan Wayne County Airport, located wholly in Romulus, for transport to and from various destinations principally in and around the metropolitan Detroit area. The Wayne county board of road commissioners,[1] which owns and operates the airport pursuant to authority granted by the aeronautics code,[2] has limited the right to pick up passengers at the airport to only those carriers with which it has entered into "concession" agreements and has promulgated rules and regulations governing the operations of carriers for hire on the airport premises. The township sought to enforce its taxicab licensing ordinance against those companies granted such concession and whose operations at the airport are subject to the board's rules and regulations.

As the chancellor commented in his opinion, the power of the township to license taxicabs and drivers thereof doing business in the township elsewhere than within the airport is not challenged. The taxicab business affects the health and safety of passengers, motorists, pedestrians, and other persons and property within the township (*Lorraine Cab* v. *City of Detroit,* 357 Mich 379) and may, therefore, be regulated by the township, by licensure or otherwise, pursuant to express legislative authority to adopt ordinances regulating, among other things, health and safety of persons and property. CLS 1956, § 41.181, as amended by PA 1959, No 55 (Stat Ann 1961 Rev § 5.45 [1]). The plaintiffs contend, however, that the aeronautics code "pre-empts" the township from applying any such ordinance to taxicab operations originating at the airport because it

---

[1] The board intervened as party plaintiff in the suits.
[2] CL 1948 and CLS 1956, § 259.1 *et seq.,* as amended (Stat Ann 1960 Rev § 10.101 *et seq.*).

authorizes the county to operate and regulate such airports; to adopt rules, regulations, and ordinances for the management, government, and use thereof; and to grant concessions for goods and services. CLS 1956, § 259.126, and CLS 1956, § 259.133, as amended by PA 1959, No 181 (Stat Ann 1960 Rev §§ 10.226, 10.233). They contend that such powers have been exercised by the county, through its board of road commissioners, by adoption of rules and regulations governing the operations of carriers for hire while on the airport premises and by execution of concession agreements with certain taxicab companies. Thus, their argument goes, the county's exercise of the powers granted by the aeronautics code so comprehensively covers the operation of taxicabs at the airport that the township is thereby precluded from imposing its license ordinance upon such business.

The township's ordinance is not applicable solely to taxicabs operating from the airport; it is universally applicable to taxicabs conducting business anywhere in the township. We are not, therefore, dealing with a direct attempt by the township to thwart or hinder the operation of taxicabs at the airport by ordinance applicable only to taxicabs authorized by the board to operate therefrom. What the plaintiffs' argument amounts to is that the ordinance otherwise applicable throughout the township may not reach those taxicabs authorized to operate from the airport because it allegedly conflicts with the county's rules and regulations and its concession agreements relating to taxicab service from the airport.

In pertinent part the rules and regulations adopted require consent of the board before a carrier for hire may load passengers at the airport, while any carrier for hire is permitted to enter the airport to discharge passengers. Nothing in the rules and regulations has any relevancy, directly or indirectly, to the li-

censure of such carriers by any other governmental agency.

The concession agreement, on the other hand, expressly provides that the favored carriers must conduct their operations in "strict conformity with all pertinent Federal, State and local government laws and regulations" and that they "shall obtain all licenses and permits which may be properly required by Federal, State [and] local government[s]." It also specifically refers to the fact that each of the favored carriers which are parties to the agreement "is duly licensed to engage in said operation,"—by the city of Detroit, as to 1 carrier (Checker Cab Company, 1 of the plaintiffs), and by the township of Romulus, as to the 2 other carriers so favored.

The concession agreement grants an "exclusive right" to offer taxicab services from the airport for a stated fee per departure payable to the board. It specifies places and procedures for loading passengers and provides for minimum standards of supervision by the carriers. It requires the carriers to provide insurance and bonds in accordance with the requirements of the financial responsibility act (CLS 1956, § 257.501 *et seq.* [Stat Ann 1960 Rev § 9.2201 *et seq.*]) and in accordance with the insurance and bond requirements of Detroit's taxicab licensing ordinance to which reference is made in the agreement. Nothing whatever is provided in the agreement relating to the rates which may be charged passengers by meter or otherwise, the condition of the taxicabs used by the carriers and inspection thereof, and the qualifications of the drivers.

In short, even if we assume without deciding that the aeronautics code empowers the county to do so, neither by agreement with carriers nor by rule and regulation has the county attempted to occupy exclusively the field of regulation covered by the township's taxicab licensing ordinance. Absent such at-

tempt, there can be no conflict. See *Huron Portland Cement Co.* v. *City of Detroit,* 362 US 440 (80 S Ct 813, 4 L ed 2d 852, 78 ALR2d 1294), affirming 355 Mich 227.

The only remaining issue is the plaintiffs' claim that the total revenues obtained from the ordinance far exceed the cost of its administration and enforcement thereby invalidating the ordinance as an exercise of the township's police power. The ordinance provides that its requirements relating to insurance and bonds, licensing of drivers, and inspection of vehicles and taxi meters may be waived upon presentation of documentary evidence of compliance with comparable requirements of another municipality. The evidence discloses that Romulus township does not possess taxi meter testing equipment nor does it otherwise inspect vehicles or drivers prior to issuance of licenses. Whenever an applicant for license in Romulus has not been licensed elsewhere, Romulus sends him to an adjoining township which has the necessary equipment and personnel for inspection and testing. The evidence also discloses that the township's revenues from the taxicab ordinance, if enforced, would equal or exceed its entire budget for both the police and ordinance enforcement departments, only a small portion of the time of which involves matters relating to regulation of the operation of taxicabs in the township.

While the chancellor made identical findings of fact from the evidence presented, he did not base his decree thereon; instead, he concluded that the ordinance was otherwise invalid. Had he considered the issue, we are convinced from his recorded findings of facts that he would have concluded, as do we on *de novo* review, that the license fees charged are so much greater than reasonably necessary to reimburse the township for its costs of regulating the licensed business that the ordinance is in fact a rev-

enue measure rather than a valid exercise of the police power and, for that reason, must be declared invalid. See *Vernor* v. *Secretary of State,* 179 Mich. 157 (Ann Cas 1915D, 128); *Fletcher Oil Co.* v. *City of Bay City,* 247 Mich 572; *North Star Line, Inc.,* v. *City of Grand Rapids,* 259 Mich 654; and *Merrelli* v. *City of St. Clair Shores,* 355 Mich 575.

. Affirmed. Costs may be taxed only by appellees who have filed briefs on appeal.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, SMITH, and O'HARA, JJ., concurred.